**Norman F. TWIFORD, Appellant,**

v.

**C. C. PEYTON, Superintendent of the Virginia State Penitentiary, Appellee.**

**No. 10741.**

United States Court of Appeals
Fourth Circuit.

Argued Dec. 8, 1966.

Decided Feb. 6, 1967.

John J. Kirby, Jr., (Court-assigned counsel), Charlottesville, Va., for appellant.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia (Robert Y. Button, Atty. Gen. of Virginia, on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

WINTER, Circuit Judge:

Whether effective assistance of counsel was denied appellant, not from any lack of competency on the part of his court-appointed attorney, but from the combination of his late appointment and the denial of a continuance to allow a proper investigation of the defense, is the question to be decided. The district court thought not and denied habeas corpus. We think otherwise and reverse.

Appellant is confined in the service of two consecutive sentences of ten years imposed April 30, 1954 in the Circuit Court of Princess Anne County, Virginia, upon his being found guilty by a jury of two charges of storebreaking. In 1964, he unsuccessfully sought a writ of habeas corpus from the Circuit Court of the City of Richmond, where he obtained a plenary hearing; when the Supreme Court of Appeals of Virginia refused review, he petitioned the court below. After obtaining the state court transcript of the habeas corpus hearing, the district court denied the writ. Numerous grounds for relief were alleged but those of substance all related to differing aspects of the right to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the Federal Constitution.

The facts, as reflected in the state court transcript and as found by the district judge from it, are not in dispute. Appellant was arrested February 12, 1954 and tried April 30, 1954. Not until April 29, 1954, the day before the trial and seventy-six days after initial incarceration, was counsel appointed to represent him. His attorney, a respected member of the bar and now a judge of a court of record of the State of Virginia, the Honorable Linwood Tabb, interviewed his client promptly. The inter-

view began between 2:00 and 3:00 P.M. April 29. The district court's summary of the evidence adduced at the state habeas corpus hearing succinctly summarizes what occurred after Judge Tabb was appointed:

" * * * Tabb reviewed the two indictments; he then conferred with petitioner at some length and ascertained that there were no witnesses to be called by the accused; he interviewed the police witnesses and obtained their version of what occurred; he talked with the jailer and recalled that there was some evidence concerning the taking of fingerprints; he returned to the jail and again talked to the accused. Petitioner told Tabb that he was ready for trial and, against the advice of Tabb, petitioner insisted that he be tried on the two indictments at the same time before a jury. Tabb also urged petitioner that Tabb be permitted to 'negotiate' with the Commonwealth's Attorney on a plea of guilty but, of course, this was impossible because of petitioner's insistence on a not guilty plea."

Appellant and his counsel were aware that a certain Lloyd C. Padgett was involved in some degree in the two offenses charged against appellant and intended to testify as a witness for the prosecution. The district court's findings as to the sequence of events continue:

"As the case was called on the morning of trial, Tabb was about to stand and announce that the defendant was 'ready' when petitioner touched his arm and asked Tabb to request a continuance. In conference, petitioner then told Tabb the name of a woman he wanted to testify.[1] Tabb's notes reflect the name of 'Frances Randolph' but apparently the correct name was 'Frances Randall.' This was a woman with whom Twiford had been living and who at one time had been keeping company with Padgett. Tabb concedes that petitioner then told him something about 'jealousy,' obviously for the purpose of showing that Padgett had a motive for testifying against petitioner. Tabb knew that he could not successfully urge a continuance at such a late date, nor could he assure the court that the witness was material or would be available at another date. Nevertheless, Tabb moved for a continuance which was denied.[2] Petitioner now contends that the Randall woman would have testified that petitioner was with her on the night that one of the crimes was committed and that he was not even in Princess Anne County." (footnotes added)

At appellant's state post-conviction hearing, appellant's testimony that Frances Randall, if called as a witness, could supply evidence that, as to at least one charge he was not in the county when one of the offenses was committed, and that there was bias on the part of one of the prosecution's key witnesses toward appellant was not controverted. Indeed, it was corroborated in part by the testi-

[1]. At the state habeas corpus hearing appellant testified that he told Judge Tabb the name of the woman, not as the case was called, but during an interview the afternoon before. Judge Tabb testified otherwise. Although the district judge did not observe the witnesses, we cannot say that his finding was clearly erroneous. In our view it makes no difference to a proper disposition of the case whether Judge Tabb knew of the witness on the day of his appointment or first learned of her the next day as the trial began.

[2]. The testimony of Judge Tabb at the state habeas corpus proceeding explains the details of why the continuance was denied. He said:

"At the time of my making a motion for a continuance I did not have an address on the woman, to the best of my recollection. I could not state to the Court that the witness was material, I could not give to The Court any assurance that the witness would be available at the next time of trial. However, I made the motion and *I was overruled because I was not within the rule of The Court in being able to state that she was material and that she would be present.*" (emphasis supplied)

mony of Judge Tabb, as the district judge found. Neither appellant nor the Commonwealth produced, or made any effort to produce, Frances Randall to determine what her testimony would have been had she been summoned as a witness for appellant at his trial.

In two recent decisions, Martin v. Commonwealth of Virginia, 365 F.2d 549 (4 Cir. 1966), and Braxton v. Peyton, 365 F.2d 563 (4 Cir. 1966), we have had occasion to restate what does and what does not constitute a denial of effective assistance of counsel. We there reviewed and cited our principal prior decisions on the subject. Extensive restatement of legal principles is thus unnecessary for a decision in this case. It suffices to say that an unnecessary and an unexplained delay between incarceration and the appointment of counsel gives rise to a substantial possibility of prejudice to an accused because defense witnesses may be dispersed or, if not dispersed, their recollections may fade. Cf. Edgerton v. State of North Carolina, 315 F.2d 676 (4 Cir. 1963). Even after appointment of counsel, no matter how competent, counsel must be afforded a reasonable opportunity to investigate and prepare a case. The late appointment of Judge Tabb and the denial of a continuance when he had the first intimation of some semblance of a defense effectively prevented him from affording appellant proper representation.[3] We do not suggest that this was the result of any incompetence on the part of Judge Tabb, because clearly he could not control the factors which dictate this conclusion, nor could any other attorney, no matter how competent, have overcome them.

As Braxton v. Peyton, supra, and Turner v. State of Maryland, 318 F.2d

852, 853 (4 Cir. 1963), exemplify, we have on occasion found that effective assistance of counsel was not denied, notwithstanding the late time of appointment or lack of preparation of counsel where the record showed affirmatively that an accused was not prejudiced thereby. In doing so, we have implied [4] that these deplorable practices are inherently prejudicial, and a mere showing of them constitutes a *prima facie* case of denial of effective assistance of counsel, so that the burden of proving lack of prejudice is shifted to the state. Cf. Shuman v. Peyton, 361 F.2d 646, 649 (4 Cir. 1966). In the case at bar, beyond proof of the facts showing inherent prejudice, appellant testified, without contradiction by the Commonwealth, that Frances Randall may have provided an alibi for one charge and a basis for attacking the credibility of a chief prosecution witness on both charges. Rather than a phantom witness, generated by a creative imagination, stimulated by long incarceration, the passage of time, and subsequent events rendering positive proof difficult, the record shows the claimed existence of this witness at the time of the original trial and provides corroboration, in part, of the nature of her testimony. The inability of counsel even to consider this woman as a witness because of the late time of his appointment was manifestly prejudicial. Estes v. State of Texas, 381 U.S. 532, 542–544, 85 S.Ct. 1628, 14 L. Ed.2d 543 (1965). To combat the showing of inherent prejudice, it was for the Commonwealth, and not appellant, to produce Frances Randall at the state habeas corpus hearing. Its failure to do so leaves the inference of prejudice, which must be drawn from the proof, unchallenged.

---

3. As we said in *Martin*, "[r]epresentation is not adequate and a trial does not meet the standards of fundamental fairness if a *court-appointed attorney is not afforded an adequate opportunity to investigate and reflect upon his client's case.*" Id., 365 F.2d p. 552. See also, Braxton v. Peyton, supra.

4. In Turner v. State of Maryland, supra, we said:
    "Normally, in the absence of clear proof that *no prejudice resulted*, we should be obliged to treat the lawyer's representation as inadequate and the trial as falling short of the standards of due process guaranteed by the Fourteenth Amendment." Id., 318 F.2d p. 854.

Because we are satisfied that in a full and fair evidentiary hearing appellant has proved the effective denial of counsel, we reverse the judgment of the district court and direct it to issue a writ of habeas corpus, staying the effectiveness thereof a reasonable time to permit appellant to be retried on the charges made against him.

Reversed.